## MARTHA J. GIVENS, Appellant, v. EDWARD MARBUT.

### Division Two, June 23, 1914.

1. **CONVEYANCE: Delivery: Husband to Wife.** The fact that, after the husband signed, acknowledged and delivered to his wife a deed conveying farm land to her, he continued to exercise a dominion over it bearing all the indications of ownership, does not destroy the unequivocal fact of actual manual

delivery. The marital relation continuing in amity and both occupying the farm as husband and wife, his control over the property in cultivating the soil and harvesting and marketing the crops was natural.

2. ———: ———: ———: Intention. Nor does the fact that the husband's intention was to avoid the payment of a possible judgment he feared might be rendered against him on a bond, destroy the effect of a consummated conveyance to the wife, since if the deed was valid for that purpose it was valid for all purposes. Nor does the fact that after her death he undertook to devise the land to his children, for the conveyance being complete it is immaterial how he thereafter regarded or construed it.

3. ———: ———: ———: Not Recorded. Nor does the fact that a voluntary deed from the husband to his wife, actually delivered, was not recorded, affect the integrity of her title.

Appeal from Barry Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*Mayhew, Sater & Gardner* for appellant.

To operate as a complete and effectual conveyance of land, the delivery of the deed, actual or constructive, by the grantor and an acceptance by the grantee, or by some one for him, are essential requisites. Hall v. Hall, 107 Mo. 107; Standiford v. Standiford, 97 Mo. 238; Huey v. Huey, 65 Mo. 689; Taylor v. Davis, 72 Mo. 291; 2 Greenleaf Ev., sec. 297; Tyler v. Hall, 106 Mo. 313. Whether there was a delivery in this case was a question of intention to be inferred from the relation of the parties, their conduct and declarations and all the facts and circumstances in evidence. Tyler v. Hall, 106 Mo. 314; Powell v. Banks, 146 Mo. 620; Mudd v. Dillon, 166 Mo. 110. Where the issue is one of law on the question of intention as to whether or not the deed which is the matter in issue and is the basis for the action, was delivered, and there was evidence tending to support the trial court's finding, the appellate court will interfere when it appears

that the issue was lost sight of at the trial or was not tried as it should have been. McNear v. Williamson, 166 Mo. 358. Delivery by the grantor to the grantee with the intention to pass the title and acceptance by the grantee with intent to take the title, are absolutely essential in the execution of a deed. Siebel v. Higgman, 216 Mo. 121; McNear v. Williamson, 166 Mo. 358. In such cases, it should appear from all the surrounding facts and circumstances and acts of the grantor as well as the grantee, that the grantor parted with all dominion and control over the instrument intending it to take effect and pass the title as a present transfer. This intention may be manifested by acts or by words or by both words and acts. Sneathen v. Sneathen, 104 Mo. 209; Standiford v. Standiford, 97 Mo. 231; Burke v. Adams, 85 Mo. 506; 2 Tiedeman on Real Property, sec. 814. Such intention, however elusive and difficult to seek out, is of the essence of delivery. Delivery is not determined by any fixed and arbitrary rule but must be worked out with reference to all the facts in the case. By virtue of the will having been recorded and defendant taking title thereunder and plaintiff having no knowledge of the deed defendant is estopped to claim under the deed. R. S. 1909, secs. 566 and 2811. The grantor knows more about the process of his own mind than anyone else does and his acts indicate what his intentions were in regard to the delivery. Chambers v. Chambers, 227 Mo. 262; Terry v. Glover, 235 Mo. 545. Intention is necessary to the delivery of a deed and must exist in the mind of the parties, evidenced by words or acts. This intention is to be gathered from the conduct of the parties, particularly of the grantor, and from the surrounding circumstances. Webber v. Christen, 121 Ill. 91; Hill v. Nichols, 80 Me. 209. Delivery depends on the grantor's intention. Coln v. Coln, 24 S. C. 597;

Fain v. Smith, 14 Ore. 82; Stevens v. Castel, 63 Mich. 111; Dwindell v. Bliss, 58 Vt. 352.

*J. S. Davis* for respondent.

(1) The execution of a deed before witnesses will be a fact from which delivery may be presumed. Tiedeman on Real Property, sec. 813; Moore v. Hasleton, 9 Allen, 106; Howe v. Howe, 99 Mass. 98; Currie v. Donald, 2 Wash. (Va.) 58. (2) It is presumed that a deed is delivered when it is found in the possession of the person to whom it is made. Green v. Yarnall, 6 Mo. 326; Games v. Stiles, 14 Pet. 322; Ward v. Lewis, 4 Pick. 520; Rogers v. Carey, 47 Mo. 232. The law presumes that a delivery of a deed to the grantee personally is done with the intention of passing the title. Tiedeman on Real Property, sec. 814; Scott v. Scott, 95 Mo. 300; Pitts v. Sheriff, 108 Mo. 115. There is direct evidence in this case that the deed from Nathan T. Marbut to Malinda J. Marbut was actually delivered to her by the grantor. The uncontradicted evidence clearly put the deed in Mrs. Marbut's possession; this is sufficient to show delivery. Inman v. Swearingen, 198 Ill. 437; Harshbarger v. Carroll, 163 Ill. 636; Allen v. DeGroodt, 105 Mo. 442; 5 Am. & Eng. Ency. Law (1 Ed.), 447; Burke v. Adams, 80 Mo. 511; Standiford v. Standiford, 97 Mo. 231. (3) Whether a deed has been delivered or not is a question of fact to be determined from the evidence; and in this case the trial court found that Nathan T. Marbut made, executed and delivered the deed to the land in question to his then wife, Malinda J. Marbut; there was evidence to sustain that finding, and it is binding on this court. Webb v. Webb, 87 Mo. 543; Handlan v. McManus, 100 Mo. 124; Renney v. Williams, 89 Mo. 145; Crane v. Timberlake, 81 Mo. 431; Wilson v. Craig, 175 Mo. 362. Where a jury is waived, and the cause is tried by the court, its finding has the conclusiveness

of a verdict of a jury. Conrad v. Belt's Admr., 22 Mo. 166; Hurlbut v. Jenkins, 22 Mo. App. 575; Schroeder v. Mason, 25 Mo. App. 194; Butler Co. v. Bank, 143 Mo. 23; Kirton v. Bull, 168 Mo. 633. (4) If a deed is once delivered, no subsequent act of the grantor can impair the validity of the conveyance. The title is then in the grantee, and it cannot be recovered from him except in one of the legal and formal ways recognized by the law for acquiring property. Tiedeman on Real Property, sec. 812; Parsons v. Parsons, 45 Mo. 268; 13 Cyc. 372, sub. 6. (5) This deed was not found among the papers of Nathan T. Marbut. There is not a word of evidence in this entire record that he ever had it in his possession after he delivered it to his wife at McDowell at the time he executed it. The presumption is that it continued in her possession. Clements v. Hays, 76 Ala. 280; Gray v. Finch, 23 Conn. 495, 513; Robson v. Rawlings, 79 Ga. 354; Choisser v. People, 140 Ill. 211; Janssen v. Stone, 60 Mo. App. 402.

WALKER, P. J.—Plaintiff brought suit in the circuit court of Barry county, for the assignment of dower in the following described real estate in said county, to-wit: The north half of the southwest quarter of section 31, township 25, range 26.

Upon a trial the court found the issues in favor of defendant, from which finding and decree plaintiff appeals.

Plaintiff married Nathan T. Marbut in 1896. They lived together a short time and in 1901 she brought suit against him for divorce, and same was granted. At the time of Nathan T. Marbut's marriage to plaintiff he was an elderly widower living in Barry county. In February, 1892, during the lifetime of his first wife, Malinda J. Marbut, he conveyed to her by warranty deed, for a nominal consideration, the land above described. About three years after this transfer Malinda J. Marbut died. During her lifetime and subse-

quently thereto her husband continued in possession of the land, and exercised the usual dominion over it indicative of ownership. Upon his death in 1910, he devised the land to the defendant.

Upon a review of the facts as preserved in the transcript, much of which is irrelevant, we find that the material question in controversy is as to the delivery of the deed from Nathan T. Marbut to his wife Malinda J. Marbut. The importance of the determination of this question renders it proper to set out in their own words the testimony of the witnesses relative thereto.

W. D. Griffith, a witness for defendant, testified as follows: "My name is W. D. Griffith. My home is down close to Carney. My business is farming. I was born and raised in this county. Marion P. Griffith was my father. He died eight or nine years ago. He was a notary public at McDowell on the 29th day of October, 1892. I was present when Nathan T. Marbut executed a deed before my father to Malinda J. Marbut at McDowell. Myself, my wife, Mr. Marbut and his wife, my father and brother were present. My brother is dead. He witnessed the deed. He died seven years ago. I am familiar with my brother's handwriting."

Witness was handed a deed dated February 29, 1892, being the deed from Nathan T. Marbut to Malinda J. Marbut, relative to which witness further testified: "That deed is in my brother's handwriting. I saw him fill out the deed for my father. I do not remember how he prepared it, whether he drew it from another deed or not. I remember he made a mistake some way in the deed, I do not remember who made the change and erasures, whether it was my brother or my father. My father first discovered the mistake. I think this was done before Nathan T. Marbut signed the deed. My father acknowledged the deed and turned it over to Mr. Marbut and Mr. Marbut

turned it over to his wife. They were sitting in the south room of the dwelling house. My father was sitting in the middle of the room between the bed and fireplace. I think I saw Nathan T. Marbut sign the deed. I do not know whether I am familiar with his signature or not." Counsel for defendant: "Q. Who had the deed just before your father had it? A. My brother, J. J. Griffith. He turned it over to my father. My father turned it over to Mr. Marbut and he turned it over to his wife. When my father got through with the deeds he handed them to Mr. Marbut and Mrs. Marbut was sitting down and he gave them to his wife. She put them in a small satchel. That is the deed I held in my hand that she put in the satchel. The name J. J. Griffith there in handwriting, is my brother's."

V. H. Marbut, a witness for defendant, testified as follows: "My name is V. H. Marbut. I live in the north part of Barry county. Nathan T. Marbut is an uncle of mine. I am a cousin of Edward Marbut, the defendant. I remember my uncle, Nathan T. Marbut, going to Mr. Griffith at McDowell to make some instruments of writing. I was there. That was during the lifetime of Malinda J. Marbut. I was present when the deed was made. I saw the deed filled out. I was one of the witnesses to the deed. It was being executed before Mr. Griffith. He is now dead. This signature to this instrument is mine. I was acquainted with Nathan T. Marbut's handwriting. I think this is his handwriting. Mr. J. J. Griffith did the writing of the deed. He was a son of the notary public. There was a mistake made in some way in the body of the deed. It was copied from another deed he had. Instead of using the name Nathan T. Marbut, he used the name in the original deed. The matter was filled in before my uncle signed it. J. J. Griffith erased the names and inserted the other names. I signed it at the request, as well as I remember, of my uncle, Nathan T. Mar-

but. Q. Do you remember at whose instance you signed this deed as a witness? A. As well as I remember, my uncle came to the door and asked me to come in. Q. You mean Nathan T. Marbut? A. Yes, sir. He said, 'I want you to witness the execution of this deed.' Mr. Griffith said, 'All right; he will do.' I am pretty sure that is the way it happened.'' In the cross-examination of this witness by counsel for plaintiff, he stated: ''I think there were three deeds made down there on that day; two deeds were made to Malinda J. Marbut and one to J. M. Marbut; the other deed to Malinda J. Marbut covered land in Lawrence county. Q. By counsel for plaintiff: These deeds were all delivered at the time? A. Yes, sir.''

As we have seen, plaintiff prevailed in the divorce proceedings, and under the aegis of that statute (Sec. 359, R. S. 1909) which provides that if a woman be divorced from her husband for his fault or misconduct, she shall not thereby lose her dower, she brings this suit upon the assumption that the husband was seized in fee of the land described during coverture. This assumption is without foundation unless the deed made by Nathan T. Marbut to his first wife lacked delivery, a requisite always essential to the vesting of title. It has been graphically said by LAMM, C. J., in Donaldson v. Donaldson, 249 Mo. l. c. 246, that ''the life of a deed is its delivery. Without delivery it is a mere dead scroll, inoperative to vest an estate. Delivery hinges on intent and is usually a mixed question of law and fact.'' Mindful of this, despite the unequivocal testimony of the witnesses in regard to delivery, plaintiff contends that the well-established facts of Nathan T. Marbut's continued dominion over the property during life, and his devise of the same to defendant at his death, are confirmations ''strong as proofs of Holy Writ'' that his deed to his first wife, although manually delivered, did not

*[Margin note: Deed: Delivery: Subsequent Use and Control of Property.]*

constitute a transfer of the property in good faith, but was a mere ruse to evade a contingency he then feared might arise, but which did not, hence the deed had no effective force to transfer the title.

That he exercised dominion over the property after the transfer, which dominion bore all the indicia of ownership, there is no question; but where the marital relation is sustained in amity, as it seems to have been in this case, his dominion was not inconsistent with her ownership.

The multiplied cares of farm life demand the joint labors of husband and wife; of necessity it becomes his duty to control and direct the management of the property, the tillage of the soil and the harvesting and marketing of the crops, while she is ever occupied with the exacting demands of the household. Under these circumstances we are not impressed with the contention that the evidence of his authority over the property indicated any lack of good faith in the transfer to his wife.

**Deed: Intention to Defeat Creditors.** The intention of the grantor, as shown by all the facts and circumstances at the time of the transaction, is material in determining the purpose for which the deed was made.

We are told, in testimony elicited by plaintiff, that the grantor's purpose was to transfer the title of the property to his wife to protect himself against the resultant effect of a possible judgment he feared might be rendered against him as surety on a bond, upon which suit was then pending in an adjoining county. Granted that this be true, no protection would have been afforded by this transfer unless it was complete in all of its particulars, and thereby effected a transfer of the title. If effective for this purpose, it was of like force for all purposes. So far, therefore, as the intention of the grantor is concerned at the time

of the making of the deed, it is indicative of a purpose in good faith to transfer the title.

In determining the good faith of the conveyance, we are not limited to facts and circumstances throwing light on the intention of the grantor alone, but evidence as to the conduct of the grantee in this regard is pertinent.

That the deed was delivered to her when it had been executed and formally witnessed, is not gainsaid. There is nothing in the evidence to indicate that she regarded it as other than a conveyance to her in good faith, or that she ever did anything thereafter indicating an absence of ownership, other than to permit her husband to control the property, which we have shown was natural and necessary under the circumstances. Certainly she never did anything to divest title out of her or vest it in her husband. True, she never had the deed recorded, but as concerns the claim here made by plaintiff this did not affect the integrity of the grantee's title. If, therefore, the title passed, and we so hold, it is immaterial how the husband may have regarded or construed the conveyance thereafter, and evidence of his devise of the property to defendant is a mere circumstance which may tend to show how the testator then regarded his tenure, but cannot affect the validity of the title which passed by the deed.

From all of which it follows that Nathan T. Marbut was not seized of the property in question during coverture with the plaintiff, and that the judgment of the trial court should be affirmed, and it is so ordered. *Brown* and *Faris, JJ.,* concur.